UNITED PAPERWORKERS INTERNATIONAL UNION and its Local No. 340, on behalf of themselves, their members and others similarly situated

v.

SPECIALTY PAPERBOARD, INC. and Rock–Tenn Co.

No. 2:92–CV–87.

United States District Court, D. Vermont.

Aug. 31, 1992.

John Davis Shullenberger, Mickenberg, Dunn, Sirotkin & Dorsch, Burlington, VT, for plaintiffs.

Heather Briggs, Downs Rachlin & Martin, P.C., Burlington, VT, for defendants.

## OPINION AND ORDER

COFFRIN, Senior District Judge.

The United Paperworkers International Union and its Local No. 340, on behalf of members of the Local, ("plaintiffs") bring this Worker Adjustment and Retraining Notification Act, 29 U.S.C. sections 2101–2109, ("WARN Act") action against Specialty Paperboard, Inc. ("SPI") and Rock–Tenn Co. ("RTC") (collectively "defendants"). Defendants moved to dismiss the complaint on the ground that plaintiffs' claims are time-barred. For the reasons that follow, defendants' motion is denied.

## BACKGROUND

This matter is before us on defendants' motion to dismiss; we will presume all factual allegations of the complaint to be true and draw all reasonable inferences in plaintiffs' favor. *Miree v. De Kalb County*, 433 U.S. 25, 25 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

In November, 1990, SPI began to solicit bids for its Sheldon Springs, Vermont paper mill. On February 4, 1991, SPI notified its Sheldon Springs workers that it had agreed to sell the mill to RTC on March 15, 1991, at which time all 232 hourly and salaried employees would be dismissed. The notice went on to add that RTC would continue to operate the mill at full capacity and would retain then-current SPI employees as needed to meet operational requirements. On March 4, 1991, SPI more clearly defined RTC's needs, specifying that RTC would rehire 115 SPI workers, retaining primarily those with seniority in departments that RTC elected to remain in operation.

On March 15, 1991, SPI fired all 232 workers and sold the mill to RTC. By March 18, 1991, RTC had offered positions to 141 former SPI workers, permanently dismissing seventy-nine hourly and twelve salaried workers. On March 11, 1992, the plaintiff union, on behalf of these seventy-nine workers, commenced this class action[1] under the WARN Act, seeking a declaratory judgment that defendants had violated plaintiffs' WARN rights, sixty days of back pay and benefits for each dismissed employee, and costs and attorneys' fees.

■ Defendants filed a motion to dismiss the complaint on the ground that plaintiffs' claims are time-barred. Although the WARN act contains no statute of limitations, defendants argue that it is appropriate to apply the six month period of section 10(b) of

---

1. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(b)(2).

the National Labor Relations Act, 29 U.S.C. section 160(b) to WARN Act claims.[2] Plaintiffs argue it is appropriate here to apply Vermont's general six year statute of limitations for civil actions, 12 V.S.A. section 511.

■ The WARN Act compels employers to give sixty days notice to their employees before mass layoffs or plant closing that result in the loss of many jobs. *See generally* 29 U.S.C. § 2102.[3] The WARN Act's purpose is to provide:

> [P]rotection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter a skill training or retraining that will allow these workers to successfully compete in the job market.

*Hotel Employees Local 54 v. Elsinore Shore Assoc.*, 768 F.Supp. 1117, 1126 (D.N.J.1991) (citing 29 C.F.R. § 639.1(a)). One of the WARN Act's principal enforcement mechanisms gives employees, or their representatives, who are aggrieved by their employer's failure to provide notice, the right to seek damages from the employer in a United States district court in an amount equivalent to sixty days pay and fringe benefits. *See* 29 U.S.C. § 2104(a). This is the nature of the action before us.

## DISCUSSION

### I. Jurisdiction and Venue

A person seeking to enforce an employer's liability under the WARN Act, including a representative of aggrieved employees or a unit of local government, may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business. 29 U.S.C. § 2104(a)(5).

### II. WARN Act Statute of Limitations

■ As noted above, the issue at stake is what statute of limitations period applies to plaintiffs' WARN Act claims. There is no dispute that Congress, in drafting the WARN Act, failed to include an express statute of limitations for claims arising under the Act. "It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." *Lampf, Pleva, Lipkind v. Gilbertson*, — U.S. —, —, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991) (citations omitted). This practice of applying state statutes of limitation to federal causes of action has enjoyed sufficient longevity that a court may assume that Congress, in declining to incorporate a limitations period into a piece of legislation, intends by its silence for the court to borrow an analogous period from state law. *Id.* (citations omitted).

While the usual rule is to borrow state statutes of limitation, there are instances requiring the application of a federal limitations period. Usually these exceptions arise where the state rules are at odds with the purpose or operation of the federal substantive law. *Id.* (citing *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983)). However, this is a closely circumscribed exception to be made only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking. *Id.* (citations omitted).

A review of recent Supreme Court decisions reveals the contours of this limited exception to the rule of borrowing state law

---

**2.** SPI dismissed the plaintiff employees on March 15, 1991 and this action was filed on March 11, 1992, a time period exceeding six months.

**3.** At least for purposes of this motion, the parties do not appear to dispute that defendants are employers within the meaning of the WARN Act,

that defendants' actions triggered the sixty day notice requirement, that none of the statutory exceptions to the notice requirement apply, or that defendants failed to provide notice as required.

limitations periods. The Court has indicated it may be appropriate to select a federal limitations period when (1) the statutory claim in question covers a multiplicity of types of actions, leading to the possible application of a number of different types of state statutes of limitations, (2) the federal claim does not precisely match any state law claim, (3) the challenged action is multistate in nature, perhaps leading to forum shopping and inordinate litigation expense, and (4) a federal statute proves a very close analogy. *Ceres Partners v. GEL Assoc.*, 918 F.2d 349, 357 (2d Cir.1990). The selection of a federal limitations period may also be appropriate where the federal cause in question is implied from a statute that also contains an express cause of action and accompanying limitations period. *See generally Lampf,* —— U.S. at ——, 111 S.Ct. at 2773.

As noted above, the main purpose of the WARN Act is to provide an employee with advance notice of his or her employer's planned major personnel actions. The Act gives an employee, aggrieved by his or her employer's failure to abide by the notice requirement, the right to seek as damages from the employer sixty days back pay and benefits. Although styled as such, WARN Act damages are not back pay because they are not compensation for past labor or services. *Finkler v. Elsinore Shore Assoc.*, 725 F.Supp. 828, 832 (D.N.J.1989). Instead, WARN Act damages compensate an employee for the injuries caused by his or her improper termination, much akin to either an action for wrongful discharge or severance pay, each of which is subject to Vermont's general six year statute of limitations for civil actions, 12 V.S.A. § 511.

Unlike actions under 42 U.S.C. section 1983 and the civil RICO statute, 18 U.S.C. § 1964, the WARN Act addresses a single specific social concern and wrongful behavior. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (applying state personal injury limitations period to all section 1983 claims); *Agency Holding Corp. v. Malley–Duff & Assoc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (applying Clayton Act limitations period to civil RICO claims). Therefore, federal interests of pre-

dictability and judicial economy do not counsel the adoption of one source, or class of sources, either federal or state in origin, for borrowing purposes with the WARN Act. *See Lampf,* —— U.S. at ——, 111 S.Ct. at 2779.

Applying Vermont's six year statute of limitations to WARN Act claims would not have the undesirable effect of encouraging forum shopping. The term "plant closing" as defined by the Act is limited to single sites of employment, 29 U.S.C. § 2101(a)(2), and venue is limited to the district where the violation is alleged to have occurred or where the employer does business, 29 U.S.C. § 2104(a)(5); unless a single plant site straddles the boundary between two states, it is unlikely prospective plaintiffs will have a broad choice of fora in which to bring their claims or that doubt will arise as to in which state triggering events occurred. Therefore, geographic considerations do not counsel for the application of a uniform federal limitations period for WARN Act claims.

No federal statute truly affords a closer fit to the WARN Act than Vermont's general civil six year statute. Defendants argue that section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), which establishes a six month limitations period for making charges of unfair labor practices to the National Labor Relations Board is "extremely analogous" and should be selected, as it was applied to fair representation suits in *DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Although a union is involved in the instant case and the WARN Act specifically provides for the bringing of claims by unions on behalf of their members, nothing in the Act is predicated upon union involvement; the Act's notice provisions and the remedial rights of aggrieved employees are creatures of statute, not the collective bargaining process. Here there does not exist the balance between stable bargaining relationships and finality of settlements on the one hand, and an employee's interest in setting aside a seemingly unjust decision under the collective bargaining process on the other. Nor does there exist here "consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the

private settlement of disputes under it." *See DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2289. Rather, all that exists under the WARN Act is a duty on the part of the employer to notify employees and concomitant right on the part of the employee to seek redress, if the employer fails to fulfill that duty. Accordingly, causes of action related to section 10(b) are not particularly analogous to WARN Act claims and the six month limitations period does not apply to claims brought under the Act.[4]

In summary, plaintiffs' WARN Act claims are most similar to causes of action in Vermont law that are subject to the general six year statute of limitations for civil actions, 12 V.S.A. § 511. Applying Vermont's six year statute to WARN Act claims will not frustrate or interfere with the implementation of federal policies, nor will it create confusion or encourage forum shopping. On the other hand, no federal statute of limitations brought to the court's attention provides a clearly superior analogue for interstitial rule making. Accordingly, Vermont's six year statute of limitations applies to plaintiffs' claims.[5]

### III. Nature of Class Relief

■ Plaintiffs filed this matter as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2).[6] Generally, the relief available in a Rule 23(b)(2) class action is either injunctive or declaratory in nature; an action primarily for money damages may not be maintained as a Rule 23(b)(2) class action. *In re School Asbestos Litigation,* 789 F.2d

996, 1008 (3d Cir.1986), *cert. denied, Celotex Corp. v. School Dist. of Lancaster,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).[7] A Rule 23(b)(3) class action, with its attendant notice requirements, remains the proper means to attain class wide relief that is primarily monetary in nature. In the instant case, while plaintiffs request nominal declaratory relief, it is clear that the principal purpose of the suit is to seek damages on behalf of each of the class members to the full extent provided by the WARN Act. Accordingly, plaintiffs must comply with the requirements pertaining to Rule 23(b)(3) unless pursuant to 28 U.S.C. § 1292(b) the Court of Appeals permits defendants to take an interlocutory appeal and finds the action to be time barred.

### CONCLUSION

For the foregoing reasons, Vermont's six year general statute of limitations for civil actions applies to plaintiffs' claims, and defendants' motion to dismiss is denied.

The court is of the opinion that its order herein involves a question of law to which there is substantial ground for difference of opinion and certifies that immediate appeal therefrom to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) may materially advance the ultimate termination of the litigation.

4. Application of the 10(b) limitations period would actually serve to frustrate the intent behind the WARN Act. By limiting an employee's potential award under the Act to two months pay and benefits, Congress was not overly generous in providing incentives for individuals to bring suit. Instead, Congress appears to have designed the Act to encourage employers to provide employees with adequate notice of projected layoffs and to encourage employees and their unions to seek class relief to vindicate a breach of the Act's policies. *See* 29 U.S.C. § 2104(a)(5). This Congressional provision providing for class actions, with their ultimate inherent time-consuming complexities, is incongruous with a short limitations period such as that contained in Section 10(b).

5. The application of Vermont's six year statute of limitations to WARN Act claims does not pre-

clude the application of equitable doctrines such as laches where the facts and circumstances so dictate. *See DelCostello,* 462 U.S. at 159, 103 S.Ct. at 2289.

6. Rule 23(b)(2) provides class relief when the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

7. This general rule does not foreclose class plaintiffs from seeking legal damages in a Rule 23(b)(2) class action when such relief is merely incidental to the injunctive or declaratory relief sought. *See Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).