SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Thomas M. EGAN, et al., Defendants.

No. 92 C 3480.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 15, 1992.

Bruce M. Lewitas, Chicago, IL, for plaintiff.

Michael John Regier, Chicago, IL, for defendant Northern Inv. Corp.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In this action stemming from the toppling of what had been thought the Stotler Empire,[1] the Securities and Exchange Commission ("SEC") has sued not only a group of

---

1. Some hyperbole is involved in that metaphor, of course. But it is certainly true that the Stotler enterprises had not only been perceived as financially secure but were also highly respected in the industry in which they played such a prominent role before their downfall.

defendants that SEC's Complaint characterizes as culpable but also another group of what it terms "Relief Defendants"—persons who are not sought to be tarred with the brush of claimed wrongdoing, but from whom SEC nonetheless seeks the disgorgement of funds. Northern Investment Corporation ("Northern") is one of those Relief Defendants—limited partners of the Stotler and Company limited partnership (the "Partnership"). All of those limited partners, including Northern, received monies that SEC contends were improperly diverted to them by way of the payment of allegedly bogus Partnership receivables (the funds allegedly diverted in that way aggregated some $5.4 million).

After this Court had rejected the several motions of Relief Defendants to dismiss SEC's Complaint and had therefore ordered them to answer SEC's allegations, Northern filed its Answer and Affirmative Defenses, including this Sixth Affirmative Defense:

> The relief requested by Plaintiff against Northern Investment is barred by the statute of limitations or statute of repose applicable under Federal securities laws, or in the alternative is in violation of Northern Investment's right to of [sic] due process of law guaranteed by the Fifth Amendment to the United States Constitution.

SEC zeroed in on that statute of limitations defense with a motion to strike, and the parties have now briefed the issues.

What is at stake here is whether any limitations period bars SEC's recovery in the same way that any *private* claim under Securities and Exchange Act of 1934 ("1934 Act") § 10(b) (15 U.S.C. § 78j(b)) and SEC's enabling Rule 10b-5 would be barred under the teaching of *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). SEC's

right to sue here is invoked under 1934 Act §§ 21(d) and (e) (15 U.S.C. § 78u(d) and (e)) and Securities Act of 1933 ("1933 Act") § 20(b) (15 U.S.C. § 77t(b)), neither of which contains an express statute of limitations.

SEC argues persuasively that Congress' omission of a statute of limitations from those statutory authorizations to sue is difficult to label as inadvertent—for at the same time as the respective enactments of those provisions, both the 1933 Act and the 1934 Act specifically defined limitation periods for various express *private* rights of action conferred by those statutes (see 1933 Act § 13 (15 U.S.C. § 77m) and 1934 Act §§ 9(e), 16(b) and 18(c) (15 U.S.C. §§ 78i(e), 78p(b) and 78r(c)). It has long been accepted that *no* statute of limitations operates against the government when it sues in its governmental capacity—see, e.g., the historical excursion into the rule *quod nullum tempus occurrit regi* in *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132–33, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938).[2] And in the securities area Congress has known precisely how to curb SEC whenever Congress wishes to do so by imposing time constraints (see 1934 Act § 21A(d)(5) (15 U.S.C. § 78u–1(d)(5)) and 1934 Act § 20A(b)(4) (15 U.S.C. § 78t–1(b)(4)).

Northern first responds (its Mem. 2) that SEC's motion to strike is "premature" and that this Court should not entertain the motion "before any significant factual inquiry has been conducted."[3] That type of argument, really bizarre when the *legal* sufficiency of an affirmative defense is at issue, is not calculated to inspire much confidence in what Northern then has to say on the merits of the matter. But this Court has not therefore been tempted to apply notions of guilt by association—instead it has looked at Northern's substantive arguments without refer-

---

2. There are of course a host of cases that have reconfirmed the continuing vitality of that ancient doctrine. This opinion cites only *Guaranty Trust* (despite its age) because that case sets out the background of the concept, rather than just repeating it in conclusory fashion.

3. Northern Mem. 3 n. 1 similarly refers to the claimed need for "discovery related to a statute

of limitations defense." When what is under consideration is whether any statute of limitations exists at all, and *not* on the applicability of such a statute to the factual circumstances of a particular case, that reference is more than merely puzzling—it strikes this Court as wholly meaningless.

ence to the frivolousness of Northern's opening procedural volley.

In substantive terms Northern attempts to ground its case primarily in *Lampf,* which said at 501 U.S. 364, 111 S.Ct. 2782 (in the limited context of the implied private right of action under 1934 Act § 10(b) and Rule 10b–5):

> Litigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation.

According to Northern, the Court's failure to begin that sentence with the words "Private litigation" rather than "Litigation" means that the time limitations extend to SEC actions as well. That is an extraordinary way to read a Supreme Court opinion in which the always-careful Justice Blackmun, writing for the Court, *began* the *Lampf* opinion with this wholly unambiguous statement of precisely what the Court was deciding in the first place (501 U.S. at 352, 111 S.Ct. at 2776):

> In this litigation we must determine which statute of limitations is applicable to a private suit brought pursuant to § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. § 78j(b), and to Securities and Exchange Commission Rule 10b–5, 17 CFR § 240.10b–5 (1990), promulgated thereunder.

And Northern's *proposed reading is doubly* extraordinary given the fact that the "1–and–3–year" limitations structure, which the Court announced for such private claims, was drawn directly from other *private* causes of action that are expressly set out in the 1933 and 1934 Acts (501 U.S. at 354–55, 111 S.Ct. at 2777).

Northern's effort at the divination of *Lampf*'s entrails also points to the passing reference in Justice Blackmun's opinion (501 U.S. at 356 n. 3, 111 S.Ct. at 2778 n. 3) to

*Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). As SEC points out, that reference occurs in the one segment of Justice Blackmun's opinion that did not command a majority of the Court.[4] But quite apart from that, Northern's attempt to draw any inference from another attenuated inference is much like the multiplication of minor fractions—the absolute value diminishes with each multiplication. In sum, Northern's principal argument is wholly without persuasive force.[5]

What *is* worth a brief discussion is whether, in going after the Relief Defendants, SEC is indeed acting in its governmental capacity. It is true that when SEC has been successful in its efforts at forcing disgorgement in other cases, its regular practice has been to enable the victims of securities fraud to recover their losses from the disgorged funds. But it is also true (1) that SEC is not forced to do so (though it may be assumed for current purposes that it will follow its usual practice if it is successful here), (2) that even if it does so, all unclaimed funds are retained by the government in all events and (3) that the source of power for such SEC disgorgement actions is vested in SEC qua government agency (see, e.g., *SEC v. Cherif,* 933 F.2d 403, 413–14 (7th Cir.1991)). Moreover, and perhaps most compelling, the test of whether SEC is acting in its governmental capacity and not merely as a surrogate for private litigants is whether any public policy is indeed served and any public interest is indeed advanced (*Dole v. Local 427, Int'l Union of Electrical, Radio & Machine Workers,* 894 F.2d 607, 612 (3d Cir.1990)), and that is certainly true of equitable disgorgement proceedings brought by SEC (see, e.g., *SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985); *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 102 (2d Cir.1978)).

Only a word need be said as to Northern's remaining due process argument—and

---

4. Justice Scalia, whose vote was necessary to command a five-Justice majority, did not join in Part IIA of Justice Blackmun's opinion (see 501 U.S. at 366, 111 S.Ct. at 2783). Hence even the sidelong glance at *Occidental Life* in Justice Blackmun's footnote spoke for a plurality of four Justices, not for the Court.

5. So far as this Court has been able to ascertain, no post-*Lampf* decision has bought the contention that Northern advances here—and several district courts have rejected the contention (see, e.g., *SEC v. O'Hagan,* 793 F.Supp. 218 (D.Minn. 1992)).

though there are a substantial number of possibilities for the choice of that word, one likely candidate is "nonsense." If Northern is to be deprived of its money (something that this Court does not now decide), that will take place only *after* it has had a meaningful opportunity to be heard on the merits and to present any defenses—including equitable defenses—to disgorgement. *That* is the "process" that is Northern's "due."

### Conclusion

SEC is right and Northern is wrong. Northern's Sixth Affirmative Defense is stricken as insufficient in law.

