Kurt L. Schultz, W. Gordon Dobie, Kyle Lawrence Harvey, Timothy P. O'Connor, Winston & Strawn, Chicago, Ill., for plaintiffs.

John E. Frey, Craig M. White, Max E. Wildman, Richard Henry Kleeman, Wildman, Harrold, Allen & Dixon, Stephen C. Sandels, Kenneth A. Grady, McDermott, Will & Emery, P.C., Chicago, Ill., for defendants.

James G. BADGER, Jr., William C. Bartholomay, Ralph A.L. Bogan, Jr., Daniel J. Donahue, Karen B. Nelson, Vincent J. O'Conor, and Thomas A. Reynolds, Jr., Plaintiffs,

v.

BOULEVARD BANCORP, INC. and Miami Corporation, Defendants.

No. 91 C 1573.

United States District Court, N.D. Illinois, E.D.

June 21, 1991.

## MEMORANDUM OPINION AND ORDER

MAROVICH, Judge.

Plaintiffs filed this eight-count complaint against defendants alleging that defendant Boulevard Bancorp Inc. ("Boulevard") committed various violations of: (1) §§ 11 and 12(2) of the Securities Act of 1933 ("SA"), 15 U.S.C. § 77k (which prohibits, *inter alia*, the making of material misstatements and omissions in registration statements) and 15 U.S.C. § 77*l*(2) (which prohibits, *inter alia*, the seller of a security from making material misstatements or omissions in a prospectus or oral communication); (2) §§ 10(b) and 29 of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b) (which prohibits the use of any "manipulative or deceptive device or contrivance" in contravention of the SEC's Rule 10b–5 in connection with the purchase or sale of any security) and 15 U.S.C. § 78cc (which addresses the validity of contracts "made in violation of any provision of [the SEA] or of any rule or regulation thereunder"); and (3) pendent Illinois statutory and common law. Plaintiffs further allege that defendant Miami Corporation is liable to plaintiffs for Boulevard's alleged SA and SEA violations pursuant to the "controlling per-

son" provisions of § 15 of the SA, 15 U.S.C. § 77o and § 20(a) of the SEA, 15 U.S.C. § 78t(a). The SA and SEA claims are in counts one through four and the pendent state claims are in counts five through eight. Before the court is defendants' motion for summary judgment as to plaintiffs' federal securities claims. For the following reasons, defendants' motion is granted. Furthermore, plaintiffs' pendent state law claims are dismissed for lack of subject matter jurisdiction.

Summary judgment is appropriate if "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a party bears the burden of proof on an issue he must "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original). A party opposing a *motion for summary judgment must do more than raise* " 'some metaphysical doubt as to the material facts' in order to survive summary judgment." *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989) (*quoting Beard* at 410). "Where the factual allegations presented by the party opposing the motion would not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

Defendant Boulevard is a bank holding company which owns the outstanding stock of four member banks: Boulevard Bank National Association ("BBNA"), First National Bank of Des Plaines, Citizens' National Bank of Downers Grove, and National Security Bank of Chicago ("National Security"). Defendant Miami Corporation is a private investment company which "at all material times" owned or controlled 49% of the outstanding common stock of Boulevard. Plaintiffs are the former shareholders of Northwest Financial Corp. ("Northwest"). Northwest—100% of whose stock is now owned by Boulevard—owns more than 99% of the outstanding common stock of National Security.

On September 29, 1989, pursuant to an Agreement and Plan of Merger dated March 23, 1989 ("Merger Agreement"), plaintiffs and Boulevard closed a transaction pursuant to which plaintiffs "exchanged" all of their shares of Northwest stock for 840,000 shares of Boulevard common stock "purportedly worth ... more than $20,000,000". The Merger Agreement contemplated, *inter alia,* that National Security would become a member bank of Boulevard, that plaintiffs would remain as the directors of National Security, and that plaintiffs would become shareholders of Boulevard.

The motion for summary judgment which is before the court is narrow in scope. The single issue presented is whether plaintiffs' federal securities claims are time-barred. This issue was originally presented to Magistrate Judge Lefkow on April 9, 1991 during a hearing on plaintiffs' motion for a preliminary injunction. On April 12, 1991 the magistrate judge read into the record her report and recommendation to this court that plaintiffs' motion for preliminary injunction be denied because plaintiffs had failed to show a likelihood of success on the merits. (The report of the April 12, 1991 proceedings is incorporated herein by reference). Plaintiffs filed with this court written objections to the magistrate judge's recommendation.

In a memorandum opinion and order issued May 3, 1991, this court rejected the magistrate judge's recommendation and granted plaintiffs' motion for a preliminary injunction. (This court's May 3, 1991 memorandum opinion and order is also incorporated herein by reference). It is important to note the reason why this court rejected the magistrate judge's recommendation. The magistrate judge based her recommendation exclusively on her implicit determination that plaintiffs' likelihood of success on the merits was not "better than negligible" because they had not demonstrated that their federal securities claims were filed within the applicable limitations period. This court did not conclude that the

magistrate judge's conclusion was wrong, but noted that the effect of the magistrate judge's recommendation was to grant permanent relief to a preliminary injunction opponent. This court believed that if the relevant facts were as clear and undisputed as the defendants and the magistrate judge believed, the most appropriate method of granting defendants the permanent relief to which they would thus be entitled would be by way of summary judgment. This court was not willing to deny plaintiffs' motion for preliminary injunction based solely on the conclusion that their chances of prevailing on the merits with respect to the fact-intensive issue of the date of the accrual of their cause of action were not "better than negligible".

The statute of limitations for private causes of action brought under §§ 11 and 12(2) of the SA is expressly provided for in § 13 of the SA, 15 U.S.C. § 77m. That statute provides for a limitation period of one year "after the discovery of the untrue statement or the omission, or after such discovery could have been made by the exercise of reasonable diligence ..." In *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990), the Seventh Circuit held that the statute of limitations set forth in § 13 of the SA also applies to actions brought pursuant to § 10(b) of the SEA. *Id.* at 1392.

The parties agree that the statute of limitations was tolled by express agreement between the parties from December 29, 1990 until the date this lawsuit was filed. Thus, if plaintiffs discovered defendants' alleged SA and SEA violations or could have discovered such violations by the exercise of reasonable diligence before December 29, 1989, plaintiffs' SA and SEA claims are time-barred.[1]

The gravamen of plaintiffs' complaint against defendants is that the "true value of the Boulevard shares [which they received in exchange for their Northwest shares under the Merger Agreement] ... was materially overstated as a result of the concealment of and material misrepresentations [by defendants] concerning" various aspects of Boulevard's well-being including, *inter alia,* the well-being of various aspects of its loan portfolio.

Plaintiffs' primary contention is that defendants withheld information about the magnitude of potential third and fourth quarter 1989 losses due to nonperforming loans until after the September 29, 1989 closing of their Merger Agreement. Related to the increase in nonperforming loans is defendants' alleged failure to have an adequate allowance for possible loan losses and an adequate provision for possible loan losses. Specifically, plaintiffs claim that the ratios of allowances for possible loan losses to the nonperforming loans and the provisions for possible loan losses to the nonperforming loans were inadequate and misleading as to the actual potential loss. Thus, argue plaintiffs, defendants made the Boulevard stock look more valuable than it would have been if more accurate provisions and allowances for loan losses were made.

The briefs submitted by both parties, while well-written and thorough, cover more ground than the court intends to address. Suffice it to say, there may very well be many disputed issues of fact on substantive issues, particularly those relevant to the pendent state claims. The court will not be distracted from the only question before it in this motion: whether the federal securities claims, which are the sole basis for this court's jurisdiction, are time-barred. The court focuses on those claims and more specifically focuses on whether plaintiffs discovered or could have discovered the alleged misrepresentations and omissions through the exercise of reasonable diligence before December 29, 1989. Plaintiffs bear the burden of proof on that issue.

1. At page six of this court's May 3, 1991 memorandum opinion and order, the court erroneously stated that the date of the tolling agreement was December 29, 1989 and that the relevant date for purposes of the one-year statute of limitations was December 29, 1990. The court inadvertently switched these dates. The correct date of the tolling agreement is December 29, 1990 and the relevant date for purposes of the one-year statute of limitations is December 29, 1989.

One of the plaintiffs is A.L. Bogan, Jr. He was the primary focus of the preliminary injunction motion. He was at all relevant times, and still is, the Chairman and Chief Executive Officer of National Security. On September 22, 1989, one week before the closing of the Merger Agreement, Bogan was elected to the Board of Directors of both BBNA and defendant Boulevard, its holding company. Bogan's directorship was effective October 1, 1989. As a director of Boulevard and Boulevard Bank, Bogan received detailed monthly financial information about both institutions. Bogan was elected as a new member of Boulevard's Asset and Liability Management Committee on October 20, 1989, the date of the first Boulevard board meeting he attended. Under the Merger Agreement, Bogan was specifically designated to represent the other former Northwest shareholders in certain matters.

The negotiations that preceded the September 29, 1989 closing began as early as the fall of 1988. The law firm of Winston & Strawn represented plaintiffs in most, if not all, of those negotiations. Plaintiff Reynolds is a senior partner of Winston & Strawn. At plaintiffs' request, Peat Marwick Main & Co. ("Peat Marwick"), a public accounting firm, examined certain Boulevard documents, interviewed certain Boulevard employees and rendered a report.

On February 13, 1989, Walter T. McNeely, President of National Security, requested that Boulevard make available for plaintiffs' review and for the review of Peat Marwick, sixteen specified items, including, *inter alia*, SEC form 10–Ks and 10–Qs, regulatory examination reports, lists of watch loans, nonaccrual loans and other nonperforming assets, business and strategic plans, budget variance analyses, federal and state income tax returns, and internal audit reports. In addition to providing most, if not all of the requested material, Boulevard also made available individual credit files and related material, e.g., listings of loans requiring special attention, loan loss reserve analyses, loan review procedures, and loan rating schedules.

Boulevard personnel, including its loans officers, were directed to give Peat Marwick full access to any of Boulevard's financial records and to provide Peat Marwick with *any information it requested.* Peat Marwick did in fact review voluminous records, including loan files, and also interviewed bank officers charged with supervising those files, although it did not undertake an individual loan-by-loan review of Boulevard's portfolio.

As of March 1989, twenty-four loans had been designated by Boulevard Bank as "Loans Requiring Special Attention", including the substantial Geothermal loan specifically mentioned by plaintiffs in their complaint. Twenty other loans were on the "watch list." Plaintiffs admit that Boulevard made these documents available but claim that they falsely depict the status of Boulevard's loan portfolio.

Several of Boulevard's public filings with the Securities and Exchange Commission ("SEC"), including its June 30, 1989 financial report, were publicly available long before December 29, 1989.

During the summer of 1989, Boulevard was required to file various publicly-filed reports such as SEC Form 10–Q and the FDIC call reports. The issuance and existence of these reports is well known to sophisticated banking and financial people like plaintiffs.

Plaintiff Bogan personally discussed the status of the most significant outstanding Boulevard Bank loan, the Geothermal loan up until the date of closing. Plaintiffs do not deny that, as late as September 11, 1989, Alan B. Fine, Vice–President and Manager of Special Assets of Boulevard Bank, informed Bogan by written memorandum of the status of the Geothermal loan. The Geothermal loan file was also readily available for review by the other plaintiffs and their accountants prior to the September 29, 1989 closing.

Bogan attended three meetings of Boulevard's board of directors prior to December 29, 1989. Prior to the October 20, 1989 meeting, Bogan received a packet of written material which included the minutes of the September 22, 1989 board meeting, loan

quality data (which included the list of loans requiring special attention as of September 30), interim monthly financial statements, minutes of the executive committee meetings, loan committee reports, and analyses of the provision for loan loss and nonperforming loans. The Geothermal loan, which was the subject of the September 11, 1989 letter from Alan Fine to Bogan, was discussed at the October 20, 1989 meeting. The Call Report filed with the Federal Reserve Board for the period ending June 30, 1989 was presented at that meeting wherein entries representing nonperforming loans of $31 million were indicated.

At the November 17, 1989 Special Boulevard Board of Directors Meeting, which Bogan also attended, the Boulevard Consolidated Monthly Financial Report for October of 1989 was distributed. That report showed nonperforming loans of $28 million.

At the Boulevard Board of Directors meeting on December 15, 1989 which Bogan also attended, it was announced that Boulevard had filed its Call Report for the period ending September 30, 1989 with the Federal Reserve Bank of Chicago. Schedule HC–H of the Call Report showed nonperforming loans totaling $40 million. Boulevard's Monthly Financial Report for November of 1989 was also distributed. This report showed that Boulevard's nonperforming loans were then totaling $45.4 million, and that Boulevard's reserve for loan losses was just under $14 million. Also at the December 15, 1989 board meeting, it was reported that Boulevard proposed a sale of the $14 million Geothermal loan at a loss of $3.3 million and a resulting decrease of approximately $2 million in net income.

Defendants correctly argue that the above-summarized reports and/or information remained readily available for plaintiffs' review and inspection after the closing as shareholders of Boulevard and as directors of National Security. In response to this assertion, plaintiffs merely say that defendants made no offer to permit any review other than that which was undertaken by Peat Marwick in March of 1989.

This argument falls way short of stating a concealment or omission which is actionable under the federal securities laws. Nowhere do plaintiffs assert that they ever requested from Boulevard and were denied access to any information or files.

In sum, plaintiffs do not *genuinely* dispute any of the facts which defendants assert in support of their motion for summary judgment. The court is thus left to determine the legal significance of those facts, i.e., whether plaintiffs knew, or by the exercise of reasonable diligence could have discovered that of which they now complain prior to December 29, 1989.

Peat Marwick reviewed Boulevard's loan portfolio on plaintiffs' behalf and reported certain facts to plaintiffs. Plaintiffs had complete access to Boulevard's internal financial data before the September 29, 1989 closing (and certainly—as a director of Boulevard (Bogan), as shareholders of Boulevard, and as directors of National Security—in the three months after the closing and before December 29, 1989). Numerous public disclosures relating to Boulevard's loan portfolio were also available before the closing. Bogan personally discussed the status of the Geothermal loan on at least several occasions with defendants before the closing. Plaintiffs also had access to public and internal information regarding the status of Boulevard's loan portfolio after the closing but before December 29, 1989. Bogan sat on Boulevard's Board of Directors for almost three months prior to December 29, 1989. He was given all information that was given to all the other directors and had access to any other information he requested.

The plaintiffs are very sophisticated business and/or legal people who are well equipped to function in the world of banking and finance. There are no country bumpkins among them. At the very minimum, this action should be time-barred because they had information which should have excited their suspicion long before December 29, 1989. There were sufficient signs of contradiction between what plaintiffs now say Boulevard communicated or failed to communicate to plaintiffs regard-

ing various aspects of its loan portfolio, and what the public record actually reported to put plaintiffs on notice that defendants committed the SA and SEA violations of which plaintiffs now complain.

## CONCLUSION

Based upon the undisputed admissions and affidavits on file, a rational trier of fact can come to only one conclusion: plaintiffs knew, or through the exercise of reasonable diligence could have known, of the existence of the "misrepresentations and omissions" alleged in their complaint prior to December 29, 1989. Accordingly, defendants' motion for summary judgment is granted as to plaintiffs' federal claims (counts one through four) because they are time-barred. Plaintiffs' pendent state law claims (counts five through eight) are dismissed for lack of subject matter jurisdiction. The preliminary injunction issued on May 3, 1991 is hereby dissolved. Thus, defendants' motion to reconsider this court's granting of plaintiffs' motion for a preliminary injunction is moot.