970 F.2d 410
 Fed. Sec. L. Rep. P 96,960
James G. BADGER, Jr., William C. Bartholomay, Ralph A.L.
Bogan, Jr., Daniel J. Donahue, Karen B. Nelson,
Vincent J. O'Conor, Jr., and Thomas A.
Reynolds, Jr., Plaintiffs-Appellants,
v.
BOULEVARD BANCORP, INC., and Miami Corporation, Defendants-Appellees.
 No. 91-2657.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 19, 1992.
Decided Aug. 12, 1992.
Rehearing Denied Jan. 6, 1993.
 
 1
 Edward L. Foote (argued), Kurt L. Schultz, Timothy P. O'Connor, W. Gordon Dobie, Kyle L. Harvey, Winston & Strawn, Chicago, Ill., for plaintiffs-appellants.
 
 
 2
 Craig M. White, Max Wildman, Lisa S. Simmons, John E. Frey (argued), Richard H. Kleeman, Wildman, Harrold, Allen & Dixon, Chicago, Stephen C. Sandels, Kenneth A. Grady, Anne R. Pramaggiore, McDermott, Will & Emery, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and VAN SICKLE, Senior District Judge.*
 
 
 4
 BRUCE M. VAN SICKLE, Senior District Judge.
 
 
 5
 Plaintiffs owned National Security Bank in Chicago. They sold their interest in that bank to Boulevard Bancorp, Inc. in September of 1989. In exchange for their interest in the bank they took 840,000 shares of Boulevard stock, which at that time had a market value of about $20 million. They quickly became dissatisfied with the performance of Boulevard and demanded a rescission of the sale. The parties began negotiations on the rescission question, but made little progress. On December 29, 1990, the parties entered into an agreement tolling the statute of limitations. No settlement was reached and the tolling agreement was in force from December 29, 1990 until this action was filed March 14, 1991.
 
 
 6
 In this action plaintiffs seek damages and rescission under federal securities statutes and pendant state law claims. Plaintiffs also named as a defendant Miami Corporation, alleging that Miami was a "controlling person" within the meaning of the securities statutes. The district court found that plaintiffs knew, or in the exercise of due diligence, should have known, that they had a cause of action before December 29, 1989; that a one year statute of limitations applied, and granted summary judgment against plaintiffs on their federal securities violation claims, holding they were time barred. The district court then dismissed the pendant state claims for lack of subject matter jurisdiction. We affirm.
 
 
 7
 We review summary judgment decisions de novo. Magnuson v. City of Hickory Hills, 933 F.2d 562 (7th Cir.1991). The parties agree that the statute of limitations in this action is one year. 15 U.S.C. § 77m. Plaintiffs claim that the statute begins to run at the time the cause of action is discovered, and that there is no requirement that they use due diligence to discover the omission or false statement, citing Lampf v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).
 
 
 8
 § 77m reads as follows:
 
 
 9
 No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(2) of this title more than three years after the sale.
 
 
 10
 Section 77l(1) creates civil liabilities for the use of interstate commerce or the mails to sell an unregistered security. Section 77k creates civil liabilities for false registration statements. Section 77l(2) creates civil liabilities for the use of untrue statements or omission of material facts in the sale of securities. It is true that in Lampf the Court did say "[t]he 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary." Id. at ----, 111 S.Ct. at 2782. The Lampf Court was discussing the application of the three year statute of repose, and this statement about the one year statute of limitations was dicta. This action is brought under 15 U.S.C. § 77l(2), use of untrue statements or omissions to sell securities. The statute of limitations for a § 77l(2) action begins to run, "after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence...." (Emphasis added). Certainly, if the Supreme Court intended to hold that this clear language is without effect they would have made a thorough exploration and discussion of the issue and negated it only on a finding that there is some constitutional or other bar to its application. The requirement that a plaintiff must have used reasonable diligence to discover the facts to trigger the one year statute of limitations is applicable to this action. The parties agree that the statute was tolled from December 29, 1990 until this action was filed, so our sole issue is; was there sufficient evidence to raise a question for the jury as to whether the statute of limitations began to run prior to December 29, 1989?
 
 
 11
 Plaintiffs allege that, prior to the closing of the deal, Boulevard concealed facts about the precarious position of some of its loans, misrepresenting Boulevard's financial position. They also allege that Boulevard acted to prevent them from discovering these facts after the closing. Negotiations on this transaction began in the fall of 1988. From the outset, plaintiffs were represented by the law firm of Winston and Strawn, one of the nation's largest law firms, and by Peat Martwick Main and Company, one of the nation's largest accounting firms. In addition, the plaintiffs themselves are all "very sophisticated business and/or legal people who are well equipped to function in the world of banking and finance". Badger v. Boulevard, 768 F.Supp. 226 (N.D.Ill.1991) (Opinion and Memorandum).
 
 
 12
 A letter of intent signed in February 1989 authorized plaintiffs and their representatives to investigate Boulevard and granted plaintiffs and their representatives access to virtually all of Boulevard's records. Plaintiffs had available to them Boulevard's SEC Form 10Ks and 10Qs, regulatory reports, lists of watch loans, nonaccrual loans, budget variance analyses, federal and state income tax returns, and internal audit reports. They also had individual credit files including listings of loans requiring special attention, loan loss reserve analyses, loan review procedures, and loan rating schedules. The formal closing of this transaction was September 29, 1989.
 
 
 13
 Shortly before the September 29, 1989 closing, one of the plaintiffs, Ralph Bogan, was placed on the board of directors of Boulevard. He functioned in that capacity for over three months prior to December 29, 1989. As a director he received the same information and reports that the other directors received, and had full access to the company's records. Plaintiffs have failed to point out any explicit actions by defendants which would amount to an intentional cover-up of any information regarding the worth of Boulevard. After considering the special expertise of the plaintiffs and their representatives, and the massive effort expended by them, against the paucity of evidence of an intentional effort by the defendants to conceal or misinform, we conclude, as did the district court, that if concealment or misrepresentation about the net worth of Boulevard occurred, the plaintiffs should have known about it prior to December 29, 1989. Therefore, this action is time barred.
 
 
 14
 Accordingly, the order of the district court granting summary judgment is affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Hon. Bruce M. Van Sickle of the District of North Dakota, sitting by designation