Andrew J. DOUGLAS, Sally P. Douglas, Kenneth J. Douglas, and Profile Publications, Inc., an Illinois Corporation, Plaintiffs,

v.

Henry C. TONIGAN, Defendant.

No. 92 C 6235.

United States District Court, N.D. Illinois, E.D.

Sept. 10, 1993.

---

Leland W. Hutchinson, Jr., Diane Maria Cifuentes, Freeborn & Peters, Chicago, IL, for plaintiffs.

Jeffrey E. Stone, Lazar Pol Raynal, McDermott, Will & Emery, P.C., Chicago, IL, for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is defendant's motion to dismiss the amended complaint. The motion is denied.

## BACKGROUND

On August 30, 1991, defendant Henry C. Tonigan, the sole shareholder of Profile Publications, Inc. ("Old PPI"), sold all of his stock in the corporation for $600,000.00 to Profile Acquisition Corporation ("Profile"), which then adopted the name Profile Publications, Inc. ("PPI") and continued Old PPI's business. Plaintiff Andrew Douglas, the president of PPI, signed the agreement on behalf of Profile. At the same time, plaintiff Sally Douglas purchased Old PPI's real property for $540,000.00, Tonigan entered into a consulting and non-competition contract with PPI, and plaintiffs Kenneth and Andrew Douglas agreed to guarantee the obligations of PPI under the various agreements. Under the non-competition contract, Tonigan was to receive $200,000.00 at closing, $216,000.00 one year after closing, and $204,000.00 two years after closing. He has not collected the second and third payments.

Plaintiffs bring this action claiming that Tonigan made various misrepresentations about the expected performance of PPI which induced them to purchase the stock and real property at an inflated price. For purposes of this motion, we accept the allegations of the amended complaint as true: Between October 1990 and early 1991, Tonigan provided Andrew Douglas with written sales projections indicating, on a customer-by-customer basis, that sales could be expected to exceed $3 million annually. Stressing that the projections were based on "solid" numbers, Tonigan reaffirmed them just prior to closing. Unbeknownst to plaintiffs, however, the projections were deceptive. They included estimated sales to customers who had never done business with Old PPI, and the corporation's revenues had been steadily decreasing. Tonigan also misrepresented the amount of additional investment needed to keep the business profitable, the condition of Old PPI's property, and certain assets on the balance sheet. Approximately $68,000.00 of the $123,000.00 in receivables were shown as more than 150 days old when they were in fact well over one year old and uncollectible, and Old PPI's retained earnings had been overestimated by roughly $18,000.00.

In Count I of the amended complaint, plaintiffs assert that Tonigan's actions constitute federal securities fraud under § 10b-5 of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's ("SEC") Rule 10b-5. Counts II through V, respectively, allege common law fraud, and breaches of the stock purchase agreement, the consulting agreement, and the real estate agreement. Count VI seeks a declaration that the guaranty is unenforceable. In his pending motion to dismiss, Tonigan argues that Count I is barred by the statute of limitations, and that the court lacks subject matter jurisdiction over the remaining counts, which are all based on state law. He also contends Counts I and II fail to plead the requisite elements of fraud and urges us to deny declaratory relief under Count VI because Andrew and Kenneth Douglas agreed in the guaranty not to raise the defense of fraud.

## DISCUSSION

In considering a motion to dismiss, the court must accept all facts alleged in the complaint as true and must draw all reasonable inferences from the pleadings in plaintiff's favor. *See Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). Dismissal is appropriate " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Kunik v. Racine County, Wis.*, 946 F.2d 1574, 1579 (7th Cir.1991) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### The Statute of Limitations for 10b-5 Actions—Count I

Recently, the Supreme Court clarified the statute of limitations for claims brought under § 10b-5 of the of the 1934 Act, 15 U.S.C. § 78j(b)[1], and SEC Rule 10b-5, 17 C.F.R.

---

1. Under § 78j(b),

   [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   \*  \*  \*  \*  \*  \*

   (b) To use or employ, in connection with the

§ 240.10b–5.[2] "Litigation instituted pursuant to § 10b–5 and Rule 10b–5 must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). Tonigan suggests that, implicit in the phrase "discovery of the facts," is the requirement that plaintiff use due diligence to discover the omission or false statement.[3] Tonigan contends Count I is time-barred because due diligence would have put plaintiffs on notice of the alleged fraud more than one year before the filing of this suit. In support of this position, he cites *Badger v. Boulevard Bancorp, Inc.*, 970 F.2d 410, 411 (7th Cir. 1992), which held that, under § 12 of the 1933 Act, 15 U.S.C. § 77*l*, the statute of limitations begins to run when reasonable diligence would have given the plaintiff notice of the fraudulent conduct.

*Badger* is inapposite, however, because it applied the limitations period contained in 15 U.S.C. § 77m:

No action shall be maintained to enforce any liability created under section 77k of 77l(2) of this title unless brought within one year after the discovery of the untrue statement or omission, or *after such discovery should have been made by the exercise of reasonable diligence . . . .*

(Emphasis added.) In contrast, the Supreme Court in *Lampf,* noting the difference in the limitations periods contained in the 1933 and 1934 Acts, expressly adopted 15 U.S.C. § 78i(e) as the limitations provision for 10b–5 actions. *See Lampf,* —— U.S. at —— n. 9, 111 S.Ct. at 2782 n. 9. That section makes no mention of "reasonable diligence":

No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

In applying § 78i(e), the court noted that the three year statute of repose and the literal language of the section make the doctrine of equitable tolling inapplicable. *See Lampf,* —— U.S. at —— – ——, 111 S.Ct. at 2782–83. The court described equitable tolling as follows: "[W]here the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Id.,* at ——, 111 S.Ct. at 2782 (citations omitted).

■■■ We thus find the statute of limitations for 10b–5 actions does not place a requirement of reasonable diligence upon the plaintiff. *See Slavin v. Morgan Stanley &*

---

purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest for the protection of investors.

2. Under SEC Rule 10b–5,

[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of an facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

3. Tonigan actually phrases his argument as follows: A securities fraud action accrues on the date of sale of the securities and the statute of limitations can only be tolled if defendant actively concealed the relevant facts, or if plaintiff could not have discovered the fraud despite his due diligence. *Lampf* makes clear, however, that the action does not accrue on the date of sale, but rather when plaintiff discovers the facts constituting the fraud. Although *McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir.1992), held that a securities action accrues on the date of sale, that case applied the Illinois statute of limitations, not the one held applicable in *Lampf.*

*Co.,* 791 F.Supp. 327, 332 (D.Mass.1992) (finding the reasonable diligence standard to be contrary to *Lampf*). Rather, the action must simply be brought one year after the plaintiff discovers the underlying facts, but no more than three years after the alleged violation. According to the allegations of the amended complaint, plaintiffs did not discover the facts constituting the alleged fraud until after September 16, 1991, less than a year before this action was filed, and the alleged 10b–5 violation occurred no earlier than August 30, 1991, the date of closing. The allegations are sufficient to avoid dismissal. *See Slavin,* 791 F.Supp. at 332 ("The complaint's allegations, which must be taken as true for purposes of this motion, are that the plaintiffs first gained actual knowledge of facts sufficient to support a claim of fraud two months prior to the filing of this action. Consequently, the suit is timely under the one year rule announced in *Lampf.* ").[4]

### The Elements of Fraud—Counts I and II

Tonigan suggests Counts I and II do not state causes of action because they do not sufficiently establish reliance on material misrepresentations. He stresses that the various written agreements, containing the sole understandings of the parties (according to an integration clause), do not include the allegedly fraudulent projections. Consequently, according to defendant, "plaintiffs have pled what the Seventh Circuit refers to as fraud by hindsight, a non-cognizable legal theory."

■ Plaintiffs' action for fraud is not precluded by the integration clause in a contract. The Seventh Circuit has held that the failure to put the representations in a contract document does not necessarily defeat materiality and reliance. *See Contractor Utility Sales Co. v. Certain–Teed Products Corp.,* 638 F.2d 1061, 1083 (7th Cir.1981) (rejecting a "put-in-writing" rule even where contract had an integration clause). Rather,

these are fact-based issues, and no one factor is determinative as a matter of law. *See Rowe v. Maremont Corp.,* 850 F.2d 1226, 1234 (7th Cir.1988) ("Rowe's failure to reduce Maremont's misrepresentations to writing in the final agreement did not defeat materiality [or reliance] as a matter of law"). Plaintiffs may have reasonably relied on the sales projections, which clearly relate to the expected revenues of the corporation, even though they were not guaranteed by Tonigan. Counts I and II thus state claims for relief.

Tonigan also argues that plaintiffs have not alleged fraud with sufficient particularity. Generally, the Federal Rules of Civil Procedure require the plaintiff simply to provide "a short and plain statement of the claim showing" an entitlement to relief. Fed. R.Civ.P. 8(a). When the cause of action includes allegations of fraud, however, Federal Rule of Civil Procedure 9(b) requires the plaintiff to state the "circumstances constituting fraud" with "particularity." Rule 9(b) is satisfied if the plaintiff sets forth the

> time, place and substance of the allegedly false representations, as well as the identity of the individual making the representations. The allegations are sufficient if the defendant is in a position to understand the nature of the conduct from which the plaintiff has drawn the inference of fraud and can defend against the allegations.

*Schaps v. R.A. Transportation Services, Inc.,* No. 86 C 4582, 1987 WL 12178, at *3, 1987 U.S.Dist.LEXIS 4756, at *8 (N.D.Ill. June 5, 1987); *see also DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990).

■ In a securities fraud case, the plaintiff must also explain "what is untrue about each of the challenged statements." *Re First Chicago Corp. Secur. Litigation,* 769 F.Supp. 1444, 1453 (N.D.Ill.1991) (citations omitted). In other words, conclusory allegations about

---

4. When plaintiffs discovered the facts constituting the fraud is a factual issue. *See Nelson v. Jain,* 526 F.Supp. 1154, 1156 (N.D.Ill.1981). Despite examining volumes of documents relating to Old PPI's assets, customers, and sales, plaintiffs maintain they were unable to discover the falsity of Tonigan's statements until well after

the closing. To prevail on the statute of limitations affirmative defense, Tonigan will presumably need to convince the trier of fact that information revealing the fraud is contained in the various documents he gave plaintiffs before the closing.

the falsity of various representations do not satisfy Rule 9(b). *See id.* Otherwise, a plaintiff "could sustain a complaint of securities fraud against any corporation with declining fortunes," as long as he asserted that the corporation's financial reports contained false statements. *Id.*

■ As explained in the background section of this opinion, plaintiffs have set forth the time, place, and substance of the allegedly false representations as well as the identity of the speaker. In addition, they have explained what is untrue about the representations. For example, in estimating future sales, Tonigan included customers who had never done business with PPI, and Old PPI's balance sheet misrepresented retained earnings and the collectibility of certain receivables. These explanations, along with Tonigan's obvious motive for making the misrepresentations, also satisfy the pleading requirement for scienter. *See* Fed.R.Civ.P. 9(b) (relaxing the pleading requirements for "malice, intent, knowledge, and other condition of mind," and permitting those elements to be "averred generally"); *Re First Chicago Corp. Secur. Litigation,* 769 F.Supp. at 1453 (citations omitted) (state of mind may be based on information and belief if the complaint "set[s] forth the facts on which the belief is founded"). Accordingly, the court finds Counts I and II to be pled with sufficient particularity.

### Waiver of Fraud in the Guaranty Contract—Count VI

■ As noted above, Andrew and Kenneth Douglas personally agreed to guarantee PPI's obligations to Tonigan under the stock purchase, consulting, and non-competition agreements. Tonigan requests dismissal of Count VI (which seeks a declaration voiding the guaranty) on the basis of a provision in the guaranty waiving any defense of fraud:

> The Undersigned will not assert, plead or enforce against the Seller any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, antideficiency statute, *fraud,* incapacity minority, usury, illegality or enforceability which may be available to

[PPI] or any other person liable in respect of any indebtedness.

Memorandum in Support of Defendant Tonigan's Motion to Dismiss Amended Complaint, Exhibit 2 (Guaranty) (emphasis added).

Illinois courts generally enforce clear and unambiguous waivers of defenses contained in guaranties. *See e.g., BA Mortgage and Int'l Realty Corp. v. American Nat'l Bank and Trust Co.,* 706 F.Supp. 1364, 1376 (N.D.Ill.1989). Tonigan, however, cites no Illinois precedent enforcing a waiver of fraud in a context similar to this case. To the contrary, allowing a defendant to avoid the normal consequences of his misrepresentations through a boilerplate waiver provision in a guaranty would undermine the policies behind securities fraud actions. This is especially true where the guaranty is intertwined with the stock purchase agreement, and the parties making the guaranty are officers of the corporation acquiring the stock. A "sufficiently strong public policy ... will cause courts to deny enforcement of contractual terms to the opposite effect." *BA Mortgage and Int'l Realty Corp.,* 706 F.Supp. at 1376.

Aside from considerations based on the statutory policy, it would compromise the integrity of the court to enforce a covenant that would allow a party guilty of fraud to escape the consequences of that fraud. Public confidence in the courts would be undermined by such a result. For that reason as well, the purported waiver of defendant's fraud is unenforceable.

The motion to dismiss Count VI is denied.

### CONCLUSION

The court denies defendant Henry C. Tonigan's motion to dismiss.