THE INTERNATIONAL MONETARY EXCHANGE, INC., Plaintiff,

v.

FIRST DATA CORPORATION, Defendant.

No. CIV.A. 99–K–915.

United States District Court, D. Colorado.

July 30, 1999.

Lee D. Foreman, Haddon, Morgan & Foreman, P.C., Denver, Co., Pedro J. Martinez–Fraga, C. Ryan Reetz, Elise D. Weakley, Greenberg, Traurig, PA, Miami, FL, for plaintiff.

Francis Stephen Collins, Alan C. Friedberg, Pendleton, Friedberg, Wilson & Hennessey, PC, Denver, CO, Rudolph F. Aragon, David G. Russell, Grace F. Woods, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, Kevin C. Kaplan, Aragon Burlington

Weil & Crockett, P.A., Miami, FL, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The International Monetary Exchange (TIME) is suing First Data Corporation (FDC) for securities fraud, fraud in the inducement, negligent misrepresentation, misappropriation of trade secrets, and fraud. This case was first filed in the U.S. District Court for the Southern District of Florida. That court transferred it here on FDC's motion to dismiss or transfer pursuant to 28 U.S.C. 1404(a) and 1406(a) after finding the parties had freely negotiated a forum selection clause and the chosen forum would not be unduly inconvenient. FDC refiled the subject motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

TIME, a Delaware corporation doing business in Florida, in conjunction with its affiliate Matrix, developed a business plan for a service that would provide international airline travelers with foreign currency exchange during or immediately before flight. Additional targeted services included in-flight travelers' checks, VAT redemption services, destination tours, and event ticketing services. TIME alleges FDC, a Delaware corporation with principal place of business in Georgia, fraudulently induced TIME to contribute the assets of the business to a new company initially to be called Skyteller with the intent of causing Skyteller's demise and then obtaining the business assets for FDC's sole use through Skyteller's bankruptcy proceedings.

In developing the business plans, TIME obtained copyrights, patent rights, trademarks, and software rights to applications necessary for the implementation of the business. To raise capital for the new business, TIME courted several investors including the Bank of Ireland and FDC. TIME obtained confidentiality agreements pertaining to all aspects of the business plan from all of the prospective investors. During the negotiations Bob Meyers and Ed Fuhrman, as representatives of FDC, convinced TIME to stop negotiations with other investors including the Bank of Ireland so FDC could pursue the business development as the sole investor. TIME agreed to FDC's investment offer based on representations made by Meyers and Fuhrman. These representations serve as the basis of the alleged scheme fraudulently to induce TIME to enter into an exclusive agreement to form Skyteller and then, after causing Skyteller to fail, purchase the plans and assets through bankruptcy proceedings.

The representations included advice and expertise to be provided by FDC for use by TIME in finalizing and implementing the business plans. These representations included permitting Skyteller to pursue the business plan developed by TIME, allowing TIME to operate Skyteller with minimal supervision from FDC, providing personnel experienced in foreign exchange and credit card processing, locating suitable business premises, purchasing critical equipment, not interfering with preflight testing, airline selection, or marketing plans, including TIME officials in all dealings with prospective Skyteller target airlines, and providing Skyteller with a budget that guaranteed Skyteller's success. TIME alleges none of the representations was true, none was ever performed by FDC, and, but for these representations, TIME would not have entered any transaction with FDC or terminated negotiations with other prospective investors.

Relying on the representations and advice of FDC, TIME agreed to form Skyteller as a Delaware LLC with headquarters in Englewood, Colorado. TIME was to contribute the accumulated business plans and assets to Skyteller in exchange for "membership units." FDC was to contribute startup money in exchange for membership units and options to purchase additional membership units. FDC could then exercise its options thereby further financ-

ing Skyteller and increasing FDC's equity share in the LLC without assuming managerial responsibilities. Skyteller was initially formed with TIME receiving an 80% interest and FDC receiving a 20% interest plus the options as detailed in the Contribution and Option Agreement and an Instrument of Contribution. Under these contracts, FDC had the option to purchase TIME's remaining interest in Skyteller at a price determined by Skyteller's after-tax earnings such that FDC's purchase price declined as Skyteller's after-tax earnings declined.

TIME alleges FDC began to manipulate Skyteller's net earnings figures, to slow Skyteller's growth, and to frustrate Skyteller's business plans and proceedings with the intent of driving the Skyteller purchase price down based on the after-tax earnings formula contained in the Contribution documents. Specifically, TIME asserts FDC decreased Skyteller's earnings by placing unproductive and inexperienced executives on Skyteller's payroll, interfering with Skyteller's business transactions, insisting Skyteller reorganize its business plans, failing to provide experienced accounting and credit card processing personnel to Skyteller, hindering Skyteller's ability to obtain suitable business premises, hindering Skyteller's purchase of critical equipment, hindering Skyteller's daily operation, hindering Skyteller's growth, and urging Skyteller creditors to place Skyteller into involuntary bankruptcy. As a result, TIME alleges, it has been fraudulently induced by FDC to relinquish its rights to the business it developed in favor of an ownership interest in Skyteller and to grant purchase options to FDC based on a pricing scheme improperly manipulated by FDC.

TIME is claiming securities fraud based on fraudulent inducement to purchase securities using the means and instrumentalities of interstate commerce, fraudulent inducement and negligent misrepresentation by FDC causing TIME to enter into the Contribution agreements, misappropria-

tion of trade secrets based on FDC's use of the business plans developed by TIME, and fraud causing TIME to abandon its negotiations with other investors and enter into exclusive agreements with FDC.

In ruling on a Motion to Dismiss pursuant to Fed.R.Civ.P.12 (b)(6), I must assume as true all factual allegations and draw all reasonable inferences in favor of the pleader. *Johnson, II v. N.T.I., Div. of Colo. Springs Circuits,* 898 F.Supp. 762, 763 (D.Colo.1995). Dismissal is appropriate only when it appears plaintiff is unable to prove any set of facts entitling it to relief. *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army,* 111 F.3d 1485, 1490 (10th Cir.1997). Additionally, the Federal Rules of Civil Procedure

> erect a powerful presumption against rejecting pleadings for failure to state a claim and that granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice.

*Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

In its motion to dismiss, FDC asserts "all of TIME's claims are legally defective and incurable" and should be dismissed as a matter of law. (Def.'s Mot. Dismiss at 3.) To each of TIME's five counts, FDC asserts either a flaw based upon common law breach of contract claims, or an affirmative defense based on the statute of limitations.

A. Effect of the Integration Clause.

▌ FDC asserts the presence of an integration clause in the Contribution agreements precludes TIME from later claiming fraud in the inducement to enter into these agreements. (Def.'s Mot. Dismiss at 10.) Based on the presence of the integration clause, FDC then argues the parol evidence rule precludes TIME from

attempting to present evidence that alters or contradicts the terms of the agreements. (*Id.*) In this argument, FDC first states the agreements were negotiated by experienced counsel representing both parties and contain terms directly contradicting the representations allegedly made by FDC that TIME relied on in entering into the agreements. (*Id.* at 12.) Thus, FDC argues, the negotiated terms and the integration clauses preclude TIME from later asserting fraud. FDC then states the representations allegedly made by FDC must not have been material or TIME "would or should have included them in the contract." (*Id.*) As such, FDC's argument is unclear as to whether the alleged representations are barred by the presence of new terms in the agreements or were immaterial because they do not appear in the agreements.

Generally stated, FDC's argument is the representations, about which TIME complains, were either immaterial as TIME did not consider them important enough to include in the agreements, or are barred by the parol evidence rule since they are superseded by the terms of the agreements negotiated by the parties. These arguments miss the point of the fraudulent inducement claim. All of TIME's claims allege fraud on FDC's part to induce TIME to enter into the business dealings with FDC. TIME is not pursuing breach of contract claims or recission of the contracts. Rather, TIME is seeking damages in tort on claims of fraud based on FDC's actions and representations before the contractual negotiations. TIME is not barred by the parol evidence rule nor the absence of FDC's representations from the business agreements negotiated by the parties. To hold otherwise would be to ignore the complaint as written by TIME. Here, TIME must plead the elements of a prima facie case of common law fraud as it has done. Defenses to breach of contract claims are irrelevant and insufficient bases to dismiss sufficiently pleaded claims of fraud.

**B. Effect of Florida's Economic Loss Doctrine.**

 Florida's economic loss doctrine prohibits a party from recovering any damages from breach of contract other than economic damages unless there is evidence of personal injury or property damage. *Interstate Secs. Corp. v. Hayes Corp.*, 920 F.2d 769, 773 (11th Cir.1991). Based on this common law doctrine, FDC argues TIME's claims are barred because the alleged misrepresentations are inseparable from the essence of the parties' contractual agreements and there are no allegations of property damage or personal injury stemming from the demise of Skyteller. (Def.'s Mot. Dismiss at 17.) The Florida Supreme Court has held fraudulent inducement to be an independent tort, requiring proof of facts separate and distinct from a breach of contract claim. *HTP, Ltd. vs. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (1996). In *HTP*, the court expressly disposed of the notion fraud in the inducement to enter a contractual relationship is barred by the economic loss doctrine. *Id.* As such, FDC's argument again confuses TIME's allegations with respect to the fraud claims. TIME has not plead breach of contract and is not seeking damages based on breach. Instead, TIME has plead the tort of fraud and is seeking compensation for those wrongs. These claims are unrelated to events which give rise to breach of contract claims and are not barred by the economic loss doctrine.

**C. Effect of the Contribution Agreements on the Misappropriation of Trade Secrets.**

 TIME alleges FDC misappropriated trade secrets owned by TIME in the form of the business plans produced to create Skyteller. FDC argues, however, all of the property rights TIME now complains of losing were transferred to Skyteller under the Contribution Agreement. FDC asserts TIME no longer owns the

rights to any of the intellectual property and therefore has no standing to assert misappropriation claims against FDC. This argument confuses the misappropriation alleged with any misappropriation which may have transpired after Skyteller was formed. Indeed, TIME believes FDC's intent was to acquire the business plans and intellectual property originally produced by TIME and run the business for its own profit. The alleged scheme included fraudulently inducing TIME to transfer the intellectual property rights to Skyteller which FDC would then force into bankruptcy and buy from Skyteller's creditors. Whether TIME is able to support these claims with sufficient evidence remains to be seen. The fact that the first part of the alleged scheme requiring TIME to transfer the rights to Skyteller came into being, however, is not a shield for FDC. The very fact Skyteller now owns the property rights based on contractual agreements between TIME and FDC does not exonerate FDC but rather provides the preliminary evidence for TIME's misappropriation claim based on the alleged scheme to defraud TIME. The lack of ownership FDC argues strips TIME of standing on this claim is the very event of misappropriation TIME complains of· and thus, fails entirely as a reason to dismiss this claim.

### D. Effect of the Statute of Limitations on TIME's Securities Fraud Claim.

■ TIME has alleged securities fraud by FDC under § 10(b) of the Securities Exchange Act of 1934 (15 USCS 78j(b)) and Securities and Exchange Commission Rule 10b–5 (17 CFR 240.10b–5), by making untrue statements of material fact in connection with the purchase and sale of the Skyteller membership units and the FDC options. (Compl. at 18.) FDC argues this claim should be dismissed in that even if true, the statue of limitations has run. (Def.'s Mot. Dismiss at 2.) Under the *Lampf* rule, 10(b) claims "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation."

*Lampf Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 362, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). TIME has alleged the transfer of numerous unproductive and inexperienced executives onto Skyteller's payroll immediately after executing the Contribution Agreements. (*Id.* at 22.) This, TIME alleges, is one way in which FDC began acting contrary to its prior representations. (Compl. at 14.) Thus, FDC argues TIME knew or should have known FDC was engaged in some fraudulent scheme, tolling the statute on the federal securities claim, more than one year before the filing of TIME's complaint. FDC argues TIME's securities fraud claim is therefore time barred and must be dismissed. This assertion cannot be supported by the present facts as plead.

The transfer of unproductive employees to Skyteller's payroll is one in a long list of abuses alleged by TIME to have occurred over a one year period after the signing of the agreements which eventually gave rise to TIME's suspicions about FDC's motives. Indeed, it wasn't until sufficient time had passed that TIME became aware the FDC employees were incompetent at the jobs they had been transferred to Skyteller to perform. Rather, the event the parties can point to as providing TIME sufficient notice of the fraudulent scheme and its relation to the Skyteller security options is the confession of FDC's Executive Vice President Charles Fote to TIME's President Richard Postrel alleged to have taken place during a conversation on May 20, 1998. (Compl. at 15.) At that time, TIME's suspicions and fears about FDC's intentions were fully realized and TIME had one year to file suit on the federal securities fraud claim. The complaint was filed nearly nine months later within sufficient time to avoid the statute of limitations running on the claim. The securities claim therefore cannot be dismissed on these grounds.

In conclusion, TIME has alleged a fraudulent scheme by FDC to induce TIME to enter a contractual relationship with FDC whereby FDC would be in a position to cause the demise of the result-

ing business and thereby cheaply acquire the business plans and assets from TIME and run the business itself. FDC has filed a motion to dismiss based on common law breach of contract doctrines and the statute of limitations on the federal securities claim. These arguments all fail to raise a sufficient basis for dismissal of TIME's claims. The fraud defenses all confuse TIME's allegations with contractual breach of contract claims. TIME's claims however are all based in fraud arising from the alleged scheme to induce TIME to enter into the contracts. FDC's Motion to Dismiss therefore fails with respect to these claims. The statute of limitations argument is based on FDC's isolation of one event in TIME's complaint that occurred more than one year before the filing of the Complaint. The seminal event that put TIME on notice of the fraudulent scheme occurred only nine months before the filing of the case and was thus within the one year statute of limitations for security fraud claims brought pursuant to Rule 10b–5. FDC's motion to dismiss also fails with respect to this claim. I therefore deny the motion to dismiss with respect to each of TIME's claims. Accordingly,

IT IS ORDERED THAT Defendant First Data Corporation's Motion to Dismiss is DENIED.