John MUNJAK, et al., Plaintiffs,

v.

SIGNATOR INVESTORS, INC.,
et al., Defendants.

No. CIV.A.02–2108–CM.

United States District Court,
D. Kansas.

March 29, 2004.

Benny J. Harding, Overland Park, KS, for Plaintiffs.

Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Charlie J. Harris, Jr., Julie Westcott, William Perry Brandt, Berkowitz Stanton Brandt Williams & Shaw LLP, Robert B. Best, Jr., Husch & Eppenberger, LLC, Jonathan H. Gregor, Mark A. Olthoff, Shughart Thomson & Kilroy, PC, Kansas City, MO, Lawrence D. Greenbaum, McAnany, Van Cleave & Phillips, P.A., Roeland Park, KS, Robert B. Rogers, Berkowitz Stanton Brandt Williams & Shaw LLP, Prairie Village, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter comes before the court on Defendants' Joint Motion for Summary Judgment (Doc. 94). Defendants The Heartland Gallogly Agency of John Hancock Signator Financial Network ("HGA"), and Stephen D. Godfrey ("Godfrey") seek dismissal of plaintiffs John and Linda Munjak's case in its entirety.[1]

## I. Background

On February 29, 2000, in response to a flyer at John Munjak's ("Munjak") place of employment, plaintiffs John and Linda Munjak attended an investment seminar at the offices of defendant HGA. Defendant Godfrey conducted the seminar, describing various retirement investment strategies and offering a free consultation for attendees who signed up for a private meeting. At the seminar, Godfrey handed out a document, which plaintiffs refer to as the "American Funds brochure," that depicted illustrations of investment strategies.

On March 15, 2000, plaintiffs met with Godfrey at the HGA offices to discuss plaintiffs' current assets, which included Munjak's pension and 401(k) from his employment at the Southwestern Bell Company ("SBC") as well as SBC stock, and their investment objections and expectations. Plaintiffs contend that Munjak stated that he did not wish to sell his SBC stock. Godfrey informed plaintiffs that he would use the information from the meeting to prepare a recommended investment plan. On March 27, 2000, plaintiffs met again with Godfrey at the HGA offices to review Godfrey's recommendations. Godfrey presented plaintiffs with a document entitled "Investment Portfolio Design for Linda and John Munjak" ("IPD"). Plaintiffs contend that the IPD represented the exact plan that Godfrey was to follow in investing their assets. Defendants deny this assertion and point out that the statement "For Illustration Purposes Only" appears throughout the IPD. The IPD presented retirement capital projections and suggested mutual funds for plaintiffs to invest in,

---

1. Defendant Signator Investors, Inc. joined in the motion but have since settled with plaintiffs.

along with Morningstar analyses and ratings of the suggested funds. During the March 27 meeting, Godfrey explained how plaintiffs would compensate Godfrey, and Munjak again stated that he did not want to sell his SBC stock.

On May 3, 2000, Munjak signed a Financial Planning Agreement ("FPA") with Godfrey, which provided the terms of Godfrey's services in providing financial advice about Munjak's SBC pension and 401(k). Munjak also signed a Consolidated IRA Application ("CIA") with Charles Schwab & Company, Inc. Based upon the terms contained in these two agreements, the parties disagree about whether Godfrey had discretion to conduct transactions in Munjak's account without Munjak's approval. Defendants contend that the FPA indicates that Godfrey did not have such discretion, while plaintiffs assert that the CIA contains a provision authorizing Godfrey to direct Schwab in trades in Munjak's account.[2]

In June 2000, Munjak received approximately $249,000 from his 401(k) and profit sharing plan and placed them in a Schwab IRA account, which Godfrey managed. Munjak also transferred his SBC stock into a separate Schwab account that plaintiffs contend Godfrey did not manage.[3] Godfrey began managing plaintiffs' funds in July 2000, but plaintiffs contend that he invested the funds differently than the plan presented in the IPD. Defendants assert that the IPD was for illustration purposes only and did not represent an exact investment plan. Plaintiffs received monthly statements that listed the funds in their account. Godfrey also met with plaintiffs quarterly to discuss their account, although in the first quarter of 2001,

plaintiffs could not attend the meeting and state that they intentionally did not return Godfrey's assistant's phone call to determine whether Godfrey would attempt to contact them again.

Plaintiffs' investments through Godfrey began to decrease in the last several months of 2000 and into 2001. Ultimately, plaintiffs fired Godfrey in July 2001 and filed this suit in March 2002.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the

**2.** Defendants also contend that plaintiffs are bound by their stipulation in the pretrial order that plaintiffs' accounts were nondiscretionary. However, the magistrate judge has vacated the original pretrial order in this case, and so the court will not take into consideration that stipulation.

**3.** The value of the SBC stock is contested by the parties.

ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Analysis

### A. Federal Securities Law Claim

#### 1. Elements of the Claim

■ Plaintiffs bring suit under § 10(b) of the Securities Exchange Act of 1934, the anti-fraud provision, which makes it unlawful, in the purchase or sale of a security, to employ "any manipulative or deceptive device or contrivance in contravention" of Securities and Exchange Commission ("SEC") rules or regulations. 15 U.S.C. § 78j(b). The SEC has issued a regula-tion that more specifically describes the scope of activities that § 10(b) prohibits:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. Therefore, in order to establish a claim under § 10(b), a plaintiff must demonstrate: (1) fraud or deception by one of the above elements; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that the defendant acted with the intent to deceive or defraud; and (4) that plaintiff relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation." *Anixter v. Home–Stake Prod. Co.,* 77 F.3d 1215, 1225 (10th Cir.1996) (citing *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 986 (10th Cir.1992)); *see also Koch v. Koch Indus. Inc.,* 969 F.Supp. 1460, 1487 (D.Kan.1997) (*rev'd in part on other grounds*).

#### a. Fraud or Deception

■ Defendants contend that plaintiffs have not established the first element of their federal securities law claim because plaintiffs have not demonstrated that defendants engaged in a fraudulent or decep-

tive act. First, defendants assert, plaintiffs have not even alleged that defendant HGA made any intentionally deceptive statements or engaged in any deceptive actions. Plaintiffs have not responded to defendants' argument. Therefore, in the absence of any evidence that HGA committed a fraudulent or deceptive act, the court dismisses plaintiffs' federal securities law claim against these two defendants.

■ Godfrey also asserts that plaintiffs have not presented evidence of his alleged acts of fraud or deception. Plaintiffs assert that Godfrey employed a device, scheme, or artifice to defraud when he "used the *American Funds* brochure in the fashion he used it." Without a more specific statement of how the use of the brochure constituted fraud, the court will disregard this allegation, particularly since the brochure is a very generalized document explaining common retirement strategies and was handed out to everyone who attended the seminar.

■ Plaintiffs also assert that Godfrey invested their money differently than he had promised in the IPD; that he invested all their funds in four months, rather than according to his promise to invest slowly over twelve months; and, that he promised them a return of 10% on their investment. Godfrey contends that he invested plaintiffs' funds in accordance with their directions during the parties' discussions, and that he invested their funds in the shorter four months with Munjak's approval. The court concludes, therefore, that plaintiffs have created a genuine issue of material fact regarding Godfrey's alleged promises to invest their money as described in the IPD and over a twelve-month period.

Godfrey also asserts that plaintiffs' statement that Godfrey promised them a return of 10% contradicts their deposition testimony and, therefore, is inadmissable. However, in Munjak's deposition, he stated

that Godfrey promised them a 10% return, although Godfrey never provided plaintiffs with any paperwork promising such a high rate of return. Consequently, the court concludes that plaintiffs have created a genuine issue of material fact as to whether Godfrey fraudulently promised them a 10% return on their investment.

#### b. Intent

■ A claim brought under § 10(b) or SEC Rule 10b–5 requires the plaintiff to prove that the defendant acted with the **intent** to defraud or deceive. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In 1995, Congress heightened the pleading standard for § 10(b) federal securities fraud claims. *See* Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 737. The PSLRA requires a proffer of specific evidence that demonstrates a defendant's intent to deceive:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2); *see also Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1096 (10th Cir.2003).

■■ Under the PSLRA's heightened pleading standard for scienter, therefore, the plaintiff must state with particularity facts that give rise to a strong inference that the defendant acted with fraudulent intent. *Kinder–Morgan*, 340 F.3d at 1105. According to the Tenth Circuit, "the appropriate level of scienter is 'a mental state embracing intent to deceive, manipu-

late, or defraud,' or recklessness." *Id.* (quoting *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001)). Therefore, a plaintiff creates a strong inference of scienter by pleading "particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." *Id.*

Intent is a question of fact that is normally reserved for the jury. However, under the PSLRA's standards, a plaintiff must plead facts demonstrating that the defendant made a statement while knowing it was false or misleading, rather than causing an alleged injury through negligent conduct. In this case, plaintiffs have not produced any evidence demonstrating that Godfrey intended to mislead plaintiffs by making false or misleading statements to them while knowing that the statements were not true. Consequently, in the absence of evidence showing that Godfrey's alleged actions rose above mere negligence and instead amounted to intent, plaintiffs' § 10(b) federal securities law claim against Godfrey is dismissed.

## 2. Statute of Limitations

Even if the court had not dismissed plaintiffs' § 10(b) claim on the merits, the claim would be time barred. A cause of action pursuant to § 10(b) and Rule 10b–5 must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (superceded by statute on other grounds). The "one-year statute of limitations period begins to run once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud." *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1201 (10th Cir. 1998).

Plaintiffs variously allege that Godfrey did not invest their money as promised in the IPD; that he invested all their funds in four months rather than the promised twelve; and, that he promised a 10% rate of return. Godfrey began managing plaintiffs' money in July 2000, and they received monthly statements detailing the funds in their account and the performance of their investments. Taking plaintiffs' allegations as true, they should have discovered Godfrey's deviation from the IPD by August or September 2000, and they would have known that Godfrey had invested all of their money by November or December 2000. Plaintiffs, however, did not file their suit until March 2002, beyond the statute of limitations. Moreover, rather than enjoying a 10% return, plaintiffs' account suffered losses of 7% in September 2000, 7 to 8% in October 2000, and 20% in November 2000. If Godfrey made, and plaintiffs believed, an alleged promise that plaintiffs' investment would return 10% gains, they should have been alerted to the discrepancy long before March 2001. Plaintiffs contend that they were not sophisticated investors, and that the statute of limitations period should therefore be tolled. However, it does not require sophisticated knowledge to discern that the money was invested in different mutual funds than as promised; that the money was invested eight months faster than promised; and, that the rate of return was markedly different than promised. Consequently, the court concludes that plaintiffs' § 10(b) securities law claim was filed beyond the statute of limitations and is, therefore, dismissed on this additional basis.

## B. Remaining State Law Claims

Federal district courts have supplemental jurisdiction over state law claims that are part of the "same case or controversy" as federal claims. 28 U.S.C.

§ 1367(a). The court may decline to exercise supplemental jurisdiction over state claims claim once it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3) "Generally, when a district court dismisses the federal claims, leaving only supplemented state claims, 'the most common response … has been to dismiss the state claim or claims without prejudice.'" *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir.1995)).

In this case, the court exercised jurisdiction over this case pursuant to 15 U.S.C. § 78aa, which sets forth original jurisdiction for United States District Courts in federal securities cases. However, the court has determined that dismissal of plaintiffs' federal claims is appropriate. Therefore, in the absence of another basis for original jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and dismisses the claims without prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion for Summary Judgment (Doc. 94) is granted in part and denied in part. The court dismisses plaintiffs' federal claim but declines to exercise supplemental jurisdiction over plaintiffs' state law claims.

**IT IS FURTHER ORDERED** that this case is hereby dismissed.